John MONROE and Baseline Technologies, LLC

v.

James. C. MCDANIEL, III and Robert Oster

NO. 16–CA–214

Court of Appeal of Louisiana, Fifth Circuit.

December 07, 2016

---

COUNSEL FOR PLAINTIFF/APPELLANT, JOHN MONROE AND BASELINE TECHNOLOGIES, LLC, Allison K. Nestor

COUNSEL FOR DEFENDANT/APPELLEE, JAMES. C. MCDANIEL, III AND ROBERT OSTER, Brett S. Lala, James M. White, III

Panel composed of Susan M. Chehardy, Marc E. Johnson, and Robert M. Murphy

JOHNSON, J.

This case involves several causes of action, including breach of fiduciary duty, fraud, violation of the Louisiana Unfair Trade Practices Act, and successor company liability, relating to a three-member limited liability corporation ("LLC"). Plaintiffs, the LLC and one member of the LLC, appeal the trial court's judgment which failed to award damages after finding Defendants, the other two members of the LLC, breached their fiduciary duty and dismissed the remaining causes of actions after finding they were meritless. For the reasons that follow, we affirm the judgment of the trial court.

## FACTS & PROCEDURAL HISTORY

In 1999, Plaintiff, John Monroe, started a company in New Orleans called Baseline Technologies, LLC ("Baseline"), that provided computer, web and email hosting and technology services. Specifically, Baseline designed, implemented and provided support for computer networks.

Shortly after Hurricane Katrina in 2005, Mr. Monroe moved to Asheville, North Carolina. Prior to moving, he discussed with Defendant James McDaniel, who had been doing "1099 work" for Baseline, the possibility of taking over the management and servicing of Baseline clients in New Orleans in exchange for an interest in Baseline. They also discussed moving Baseline's infrastructure to Asheville and expanding Baseline to the Asheville market. The two reached an agreement, and in April 2006, Mr. McDaniel became a member of Baseline and Mr. Monroe conducted Baseline's work in North Carolina. There was no written agreement regarding the arrangement.

Two years later, in April 2008, at the request of Mr. McDaniel, Defendant Robert Oster joined Baseline as a member. Like Mr. McDaniel, Mr. Oster had done some "1099 work" for Baseline before becoming a member. Mr. Oster became a member under the same terms as Mr. McDaniel—he was to service existing Baseline clients in New Orleans and bring new clients to Baseline in exchange for an interest in Baseline. Neither Mr. McDaniel nor Mr. Oster contributed any capital to Baseline upon becoming a member, but Mr. Oster merged his existing business, Oster Technology, into Baseline which added approximately 12 clients.

After Mr. Oster became a member, each of the three members owned an equal one-third interest in Baseline and each had equal input regarding its management. According to all three parties, each agreed to bill enough hours to cover their own salaries, which required approximately 12–13 hours per week. Again, there was no written agreement regarding the arrangement.

Also in April 2008, Baseline hired a small business consultant, Cynthia Sprau, from Asheville to help with its business development in both New Orleans and Asheville. Ms. Sprau worked with Baseline's three members through weekly telephone conferences over the next year and a half. According to Ms. Sprau, Baseline struggled with cash flow. She noted Baseline was not profitable, but it was gaining. She specifically testified that significant strides in sales were being made by Mr. McDaniel and Mr. Oster in New Orleans, but "it wasn't happening in North Carolina." Ms. Sprau stated that Mr. Monroe was more disposed to doing administrative tasks. She explained that she spent time during their weekly meetings trying to convince Mr. Monroe to see that the company was too small for a managing partner and to encourage him to produce or generate business.

By the end of 2008, Mr. Oster was frustrated by Mr. Monroe's lack of productivity and expressed his concerns to Mr. Monroe as well as to Ms. Sprau. The issue came to a head in May 2009 over a two-day telephone conference between the three members and Ms. Sprau when discussions were held about Mr. Monroe's lack of productivity and his conduct, which indicated that he believed he had a different role in the company or was the "managing" partner and that he did not have to work as hard as the other two members at generating business. Mr. McDaniel testified that he told Mr. Monroe during this meeting that if things did not change, there was a likelihood he would leave the company. Mr. McDaniel also testified that although he was angry after the meeting, he was willing to give Mr. Monroe more time to change and generate business.

On September 4, 2009, Mr. McDaniel and Mr. Oster left Baseline and formed their own company, nSpire Technologies, LLC ("nSpire"), which provided similar computer services as Baseline. One week later, on September 11, 2009, Mr. McDaniel and Mr. Oster sent a letter to Baseline's clients advising them of the new company and informing them of their option to stay with Baseline or move to nSpire. The letter included Mr. Monroe's contact information in the event the client chose to stay with Baseline. A number of Baseline clients subsequently became clients of nSpire.

On February 2, 2010, Mr. Monroe and Baseline filed the current lawsuit against Mr. McDaniel and Mr. Oster seeking damages based on their conduct in leaving Baseline and forming their own company. Specifically, Plaintiffs alleged that Defendants (1) breached their fiduciary duty as members of Baseline when they formed a competing company and took the majority of Baseline's clients, and (2) violated the Louisiana Unfair Trade Practices Act (LUTPA) in forming a competing company while working for Baseline and drawing a salary.[1] In a supplemental and amending petition, Plaintiffs added nSpire as a defendant. Plaintiffs further asserted additional causes of action against Defendants including: (1) fraud and conspiracy to commit fraud, (2) tortious interference with business relationships, and (3) successor liability.

Defendants separately answered the petition and supplemental and amending petition. Mr. McDaniel and Mr. Oster further asserted reconventional demands alleging that Mr. Monroe breached his fiduciary duty to Baseline and its members, fraudulently manipulated Baseline's financial records, and violated LUTPA. Their reconventional demands further sought an accounting of Baseline's financial condition from September 4, 2009 to the present, reimbursement for expenses incurred on behalf of Baseline and not paid, compensation for work performed on behalf of Baseline after September 4, 2009, and cash distribution of their membership interest equivalent to 1/3 of Baseline's fair market value as of September 4, 2009.

The matter proceeded to a bench trial on June 29 and 30, 2015. After taking the matter under advisement, the trial court rendered judgment on November 18, 2015, finding Mr. McDaniel and Mr. Oster breached their fiduciary duties for planning to start a new company during Baseline's business hours and while employed as members of Baseline. The trial court also found Mr. Monroe breached his fiduciary duty for failing to bill the agreed upon hours and for working as a general contractor on his house and working at a wine store during Baseline's business hours while employed as a member of Baseline. However, the trial court concluded that none of the parties proved they incurred any damages as a result of the breach of fiduciary duty; thus, it did not award damages to any of the parties. The trial court further found the remaining claims, both in the main demand and the reconventional demand, were without merit and dismissed them with prejudice. Mr. Monroe and Baseline appeal this judgment.[2]

### ISSUES

Plaintiffs argue that the trial court erred in (1) failing to award damages for Defen-

---

1. Plaintiffs also alleged conversion and sought injunctive relief, but dismissed these claims prior to trial.

2. Neither Mr. McDaniel nor Mr. Oster appealed the judgment or answered the appeal challenging any part of the judgment.

dants' breach of fiduciary duty, (2) failing to find Defendants committed fraud or conspired to commit fraud, (3) failing to find Defendants violated LUTPA, and (4) failing to impose successor liability on nSpire.

### |₅LAW & ANALYSIS

#### Damages

■ Plaintiffs challenge the trial court's failure to award damages for Defendants' breach of their fiduciary duties. Plaintiffs assert that the trial court erroneously failed to award damages after concluding that all parties were liable for breach of fiduciary duty and that no party's breach was more egregious than the others. In this regard, Plaintiffs argue the trial court erred in finding that Mr. Monroe breached his fiduciary duty to Baseline and its members by failing to bill the agreed upon hours and working on other endeavors during Baseline's business hours.

First, we note that the finding that Mr. Monroe's breach of fiduciary duty was no more egregious than Defendants' breach was not made in the judgment. Rather, the comment was made in the trial court's reasons for judgment, which do not form a part of the judgment for our review. *See Bellard v. American Central Ins. Co.*, 07–1335 (La. 4/18/08); 980 So.2d 654, 671 ("the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment"). A review of the judgment shows that the trial court did not award damages after finding the parties failed to prove they incurred damages. Thus, we will review the failure to award damages solely on this basis.

Members of an LLC owe a fiduciary duty to the company and its members. La. R.S. 12:1314(A)(1). The trial court determined that Mr. McDaniel and Mr. Oster breached their fiduciary duty to Mr. Monroe and Baseline by planning to start a new company during Baseline's business hours while employed as members. However, the trial court did not award any damages because it found that Plaintiffs failed to prove their damages.

|₆Louisiana Revised Statutes 12:1302, *et seq.*, set forth the law pertaining to limited liability companies. However, there is no specific statute setting forth the damages owed for the breach of fiduciary duty by a member of an LLC. Nonetheless, we find guidance under La. C.C. art. 2809, which provides that a partner who breaches his fiduciary duty owed to the partnership and his partners is liable to the partnership and his partners for his resulting profits.

■ In an analogous case involving a breach of fiduciary duty in a partnership, the Louisiana First Circuit explained that La. C.C. art. 2809 contemplates that the damages for a breach of fiduciary duty by one or more partners are measured in terms of the profits derived by the offending partner as a result of the breach minus the amount of the offending partner's original investment. *Thibaut v. Thibaut*, 607 So.2d 587, 604 (La. App. 1st Cir. 1992), *writs denied*, 612 So.2d 37, 38, 101 (La. 1993). In *Thibaut*, the defendants were found to have breached their fiduciary duties owed to the partnership and to the other partners by acting secretly to establish a business to overtake the partnership. The defendants filed to liquidate the partnership and then, upon liquidation, started their own similar business.

In determining the damages owed, the court noted:

> . . . the actions and maneuvers undertaken by the defendants in their plans to take over the business of the partnership in their own names to the exclusion of the plaintiff partners caused the demise of the partnership. The defendants essentially obtained an already established, reputable, business enterprise

while incurring costs imply to purchase the necessary equipment.

*Thibaut*, 607 So.2d at 605. The court concluded that the breaching partners gained the value of the existing partnership, which had to be reduced by the investment of the breaching partners. In calculating damages, the court noted that the value of the original partnership immediately prior to the filing of the petition for liquidation by the breaching partners had to be determined.

In the present case, there was no evidence regarding the value of Baseline prior to Defendants' departure. Plaintiffs offered the testimony of Melissa Smith as an expert in commercial finance and lending. Ms. Smith testified that she reviewed Baseline's financial records from 2006 through March 2009. She opined that Baseline's quality of accounts receivable was very good and quality of its customer base was very sound. Ms. Smith stated that although Baseline's net profit had been negative in some years, the company had a positive trajectory and was growing in part. She indicated that in a three-year analysis, Baseline was roughly breaking even in net profit. Ms. Smith opined that as of April 2009, Baseline was experiencing positive growth. At no time did Ms. Smith testify as to the value of Baseline. Additionally, there was absolutely no evidence regarding the value of nSpire. Therefore, we find Plaintiffs failed to carry their burden of proving damages, or the profits Defendants derived from the breach of their fiduciary duties. Accordingly, we find the trial court did not err in failing to award damages.

Fraud or Conspiracy to Commit Fraud

■ Plaintiffs next argue the trial court erred in finding their claim against Mr. McDaniel and Mr. Oster for fraud and conspiracy to commit fraud was without merit. Plaintiffs maintain Defendants committed fraud when they failed to disclose

their intent to form a new company when they had a duty as fiduciaries to disclose all material facts surrounding a transaction that might affect the decision of a principal.

■ Under La. C.C. art. 1953, fraud is a misrepresentation or a suppression of the truth made with the intent either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. *Id.* In order to find fraud from silence or suppression of the truth, there must be a duty to speak or disclose information. While fraud may result from a party's silence or inaction, mere silence or inaction without fraudulent intent does not constitute fraud. *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 11–72 (La. App. 1 Cir. 8/17/11); 76 So.3d 502, 509, *writ denied*, 11–2021 (La. 11/18/11); 75 So.3d 464. Fraudulent intent, or the specific intent to deceive, is a necessary and inherent element of fraud. *Sanga v. Perdomo*, 14–609 (La.App. 5 Cir. 12/30/14); 167 So.3d 818, 821, *writ denied*, 15–222 (La. 6/19/15); 172 So.3d 50.

■ The existence of fraud is a question of fact; thus, the trial court's determination of fraud or its absence is subject to the manifest error standard of review on appeal. *Smith v. Roussel*, 00–1028 (La. App. 1 Cir. 6/22/01); 809 So.2d 159, 164. Upon review of the record, we do not find the trial court was manifestly erroneous in failing to find Defendants committed fraud or conspired to commit fraud. The record is devoid of any evidence that Defendants intended to deceive Plaintiffs or that Defendants acted to obtain an unjust advantage or to cause Plaintiffs a loss or inconvenience.

It was no secret that Mr. Oster had become unhappy with Mr. Monroe and his lack of performance. The issue was discussed with Baseline's business consultant

and directly with Mr. Monroe on several occasions. Contrary to Mr. Monroe's claim that he had no idea Mr. McDaniel and Mr. Oster intended to leave Baseline, he admitted that they told him that it was a possibility. Mr. McDaniel testified that during the May 2009 meeting, he told Mr. Monroe that he would have to leave if things did not change.

Although Mr. McDaniel and Mr. Oster started planning a new company while they were members of Baseline, there was no evidence they intended to obtain an unjust advantage or cause Plaintiffs a loss. When Defendants left Baseline, they left all the assets, including accounts receivable and their two-third interests in the company. While the evidence shows Defendants ultimately obtained some of Baseline's clients, there was no evidence to show Defendants ₉schemed or acted to obtain the clients while they were members of Baseline. To the contrary, Defendants sent a letter to Baseline's clients after they left to explain to the clients that the company had split and to give the clients Mr. Monroe's contact information. Further, there was no indication that Defendants utilized confidential information from Baseline. The record simply shows that Defendants left Baseline because they were dissatisfied with Mr. Monroe. There was no evidence Defendants deliberately acted to sabotage Plaintiffs when they left and formed a new company.

■ Further, one who conspires with another to commit an intentional act is answerable, *in solido* with that person, for the damages caused by such act. La. C.C. 2324. The actionable element in a claim for fraud is not the conspiracy itself, but rather the tort that the conspirators agree to perpetrate, which they actually commit in whole or in part. In order to recover under this theory of liability a plaintiff must prove that an agreement existed to commit a tortious act which resulted in the plain-

tiff's injury. *Abadie v. Metro. Life Ins. Co.*, 00–344 (La.App. 5 Cir. 3/28/01); 784 So.2d 46, 88. While Defendants agreed to form a new company, Plaintiffs failed to prove that this agreement constituted fraud. As discussed above, Plaintiffs failed to prove Defendants specifically intended to defraud Plaintiffs.

## Violation of LUTPA

■ Plaintiffs also contend the trial court erred in failing to find Defendants violated LUTPA. They contend the evidence sufficiently proves they suffered a loss as the result of Defendants' unfair or deceptive acts.

■ LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405. A right of action is afforded to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." La. R.S. 51:1409(A). The purpose of LUTPA is to protect consumers and to foster competition by "halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry." *Quality Environmental Processes, Inc. v. I.P. Petroleum Co.*, 13–1582 (La. 5/7/14); 144 So.3d 1011, 1025.

■ Acts constituting unfair or deceptive trade practices are not specifically defined by are determined on a case-by-case basis. *Quality Environmental, supra.* The Louisiana Supreme Court has consistently held that in order to establish a LUTPA claim, a plaintiff must show that "the alleged conduct offends established

public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* quoting *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 09–1633 (La. 4/23/10); 35 So.3d 1053, 1059. The supreme court has further explained that the range of prohibited practices under LUTPA is extremely narrow and includes "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct." *Cheramie Services supra* at 1060. A defendant's motivation is a critical factor—his actions must have been taken with the specific purpose of harming the competition. *Creative Risk Controls, Inc. v. Brechtel*, 01–1150 (La.App. 5 Cir. 4/29/03); 847 So.2d 20, 24, *writ denied*, 03–1769 (La. 10/10/03); 855 So.2d 353.

Plaintiffs claim Defendants violated LUTPA by forming a competing business while members of Baseline. We find the record does not support a finding that Defendants' conduct in forming a new company constituted fraud, misrepresentation, deception or other unethical conduct. As discussed *supra*, there is no evidence that Defendants actions were taken with the specific purpose of harming Plaintiffs.

Successor Liability

Finally, Plaintiffs assert the trial court erred in failing to find nSpire was a successor company to Baseline and, therefore, erred in refusing to impose successor liability on nSpire. Plaintiffs maintain that nSpire is merely a continuation of Baseline and, thus, should be liable for Baseline's debts.

Louisiana Civil Code Article 1821 provides that a person may assume the obligations of another. In order for the assumption to be enforceable against third parties, the assumption must be in writing. Despite the lack of a written assumption of Baseline's obligations by nSpire, Plaintiffs nonetheless contend that nSpire is liable for Baseline's obligations under the theory of successor liability.

The basic principle of corporate successor liability was set forth by the U.S. Supreme Court in *Golden State Bottling Co., Inc. v. National Labor Relations Board*, 414 U.S. 168, 182 n.5, 94 S.Ct. 414, 424, 38 L.Ed.2d 388 (1973), as follows:

> [T]he general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability.

This principle of successor liability has been followed by Louisiana Courts [3] and is consistent with the Louisiana Supreme Court's earlier discussions of corporate reorganization and successor liability in *W.F. Taylor Co. v. Gulf Land & Lumber Co.*, 119 La. 426, 44 So. 187 (La. 1907), and *Wolff v. Shreveport Gas, Electric Light & Power Co.*, 138 La. 743, 70 So. 789 (La. 1916).

Plaintiffs' argument that nSpire is merely a continuation of Baseline falls under exception number two. In determining whether the successor is in fact a continuation of the predecessor, consideration should be given to whether the predecessor and successor have common shareholders, directors, officer or even employees. Additionally, prior business rela-

---

**3.** *See J.D. Fields & Co. v. Nottingham Construction Co., LLC*, 15–723 (La. App. 1 Cir. 11/9/15); 184 So.3d 99, 101–02; *Pichon v. Asbestos*, 10–570 (La. App. 4 Cir. 11/17/10); 52 So.3d 240, 243–44, *writ denied*, 10–2771 (La. 2/4/11); 57 So.3d 317; *Bourque v. Lehmann Lathe, Inc., Div. of Smith International, Inc.*, 476 So.2d 1125, 1127 (La. App. 3rd Cir. 1985).

tionships should be considered as well as the continuity of the identity of the business in the eyes of the public. *J.D. Fields & Co. v. Nottingham Construction Co., LLC*, 15–723 (La. App. 1 Cir. 11/9/15); 184 So.3d 99, 103. However, the threshold requirement to trigger successor liability under the "continuation" exception is that one corporation must have purchased *all* the assets of the other. *Pichon v. Asbestos*, 10–570 (La. App. 4 Cir. 11/17/10); 52 So.3d 240, 244, *writ denied*, 10–2771 (La. 2/4/11); 57 So.3d 317, citing *Golden State, supra*, and *Wolff, supra*. Here, there is no evidence nSpire purchased any of the assets of Baseline, much less all of the assets. To the contrary, the record shows Defendants left Baseline with all of its assets when they formed nSpire.

We further note that neither exception number one (agreement to assume liabilities) nor exception number three (new corporation formed to escape liability) apply so as to impose successor liability on nSpire. There is no evidence in the record that nSpire expressly or implicitly assumed any obligations or liabilities of Baseline. Mr. McDaniel and Mr. Oster testified that when they left to start nSpire, they left enough assets through accounts receivable and fixed assets with Baseline for Baseline to cover its liabilities. Mr. Monroe agreed that as of the day Defendants left Baseline to start nSpire, the balance sheet for Baseline showed it has enough assets to pay down Baseline's $50,000 line of credit.

Additionally, there is no evidence that nSpire was formed to escape Baseline's liabilities. The record shows that nSpire was formed by Mr. McDaniel and Mr. Oster because they were unhappy with Mr. Monroe's lack of work and inability to bring money into Baseline. Further, there was no evidence that Baseline's $50,000 line of credit had been called by the bank at the time nSpire was started and, as

noted above, Baseline had enough assets to pay the line of credit.

Accordingly, we do not find the trial court was manifestly erroneous in dismissing Plaintiffs' claim for successor liability.

### *DECREE*

Based on the foregoing, we find no error in the trial court's failure to award damages for Defendants' breach of fiduciary duties or in dismissing Plaintiffs' claims for fraud, conspiracy to commit fraud, violation of LUTPA, and successor company liability. Accordingly, the trial court's November 18, 2015 judgment is affirmed. Costs of this appeal are assessed against Appellants, James Monroe and Baseline.

**AFFIRMED**