RIVER RENTAL TOOLS, INC.   *   NO. 2021-CA-0716

VERSUS   *

SMITH POWER SOLUTIONS, LLC   *

   *

   * * * * * * *

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 63-972, DIVISION "B"
Honorable Michael D. Clement,
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

George Pivach II
Timothy Thriffiley
PIVACH, PIVACH, HUFFT, THRIFFILEY & DUNBAR, L.L.C.
8311 Highway 23, Suite 104
P. O. Box 7125
Belle Chasse, LA 70037

   COUNSEL FOR PLAINTIFF/APPELLEE


Bryan Edward Lege
KRAFT LEGE, LLC
Chase Tower
600 Jefferson Street, Suite 410
Lafayette, LA 70501


   COUNSEL FOR DEFENDANT/APPELLANT

   **AFFIRMED IN PART; REVERSED
   AND VACATED IN PART**

*DLD*
*RLB*
*JCL*

This matter involves a breach of contract/sale claim, wherein the trial court ruled in favor of the plaintiff, River Rental Tools, Inc. ("River Rental"), and against the defendant, Smith Power Solutions, LLC ("Smith Power"). The trial court ordered the rescission of the contract and awarded the plaintiff the return of the contract price, damages and interest. For the reasons that follow, we affirm the judgment of the trial court in part and we reverse in part.

**FACTS AND PROCEDURAL HISTORY**

On September 21, 2016, River Rental contacted Smith Power regarding the purchase of new power units to do a repower on some centrifugal pumps. River Rental advised Smith Power's representative, Jerry Smith, that it was looking for two 120 – 140 hp engines, preferably 4BT Cummins units, with 12 volt starters and alternators. On October 7, 2016, Smith Power advised River Rental that it had obtained pricing on two Cummins Model 4B3.9L 125 hp engines for a price of $8,800.00 per engine. In an October 7, 2016 email, River Rental advised Smith Power that it would also need engine panels for the engines. The total amount of the sale was $18,581.90, which River Rental paid in full by October 13, 2016.

1

On October 14, 2016, Mr. Smith informed River Rental that the engine supplier agreed to change the starters and alternators on the engines from 24 volts to 12 volts at no extra charge and that the engines would be ready to ship by the end of the next week. However, the engines were not delivered to River Rental until March of 2017. In fact, these engines had not even been sold to Smith Power by Seven Kings, LLC until sometime after December 21, 2016. Upon delivery, River Rental found that the engines were not what had been ordered from or promised by Smith Power. The engines were not converted from 24 volts to 12 volts; the solenoids in the engines were never changed to 12 volts; and Smith Power did not supply the correct engine panels and wiring harnesses.

After finding that the engines did not meet the specifications and equipment promised, River Rental contacted Smith Power. Mr. Smith responded that the engines were sold "as is" and were non-returnable even though there was nothing to that effect in the sales invoice.

Failing to reach an amicable solution, on September 22, 2017, River Rental filed a petition to rescind the contract and seeking damages. In response, Smith Power filed an answer and a reconventional demand on October 27, 2017. Following a bench trial on April 19, 2021, the trial court entered a judgment on August 5, 2021, ruling in favor of River Rental and against Smith Power. The trial court ordered the rescission of the sale of the two engines and awarded River Rental $18,581.90 for the return of the purchase price of the engines, as well as additional damages of $13,366.88, plus legal interest thereon from the date of judicial demand until paid, plus all costs of the proceedings. The trial court further found that Smith Power committed fraud and violated the Louisiana Unfair Trade Practices Act (LUTPA), awarding River Rental an additional $20,950.00 as an

2

award of attorney's fees. Finally, the trial court dismissed Smith Power's reconventional demand with prejudice.

Smith Power now appeals the trial court's judgment and River Rental has answered the appeal seeking additional costs and attorney's fees in defending the appeal.

**DISCUSSION**

On appeal, Smith Power raises the following assignments of error: 1) the district court committed manifest error in finding that Smith Power committed fraud and/or violated the Louisiana Unfair Trade Practices Act and awarding attorney fees; 2) the district court committed manifest error in finding that River Rental did not commit fraud and in failing to award attorney's fees to Smith Power; 3) the district court committed manifest error in failing to find that contract of sale was an absolute nullity as it was entered into by River Rental with the intent of circumventing EPA regulations; and 4) the district court committed manifest error in awarding additional damages for the work/services provided by Coastal Engines in the amount of $13,366.88, which River Rentals admits it never paid. Also, River Rental seeks to recover the attorney's fees associated with defending this appeal.

*Standard of Review*

The Louisiana Supreme Court has made clear that in all civil matters, the appropriate standard for appellate review of determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Hayes Fund for the United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2582, p. 8 (La. 12/18/15), 193 So.3d 1110, 1115

3

(citation omitted). Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Hall v. Folger Coffee Co.*, 03-1374, p. 9 (La. 4/14 /04), 874 So.2d 90, 98 (citation omitted). Rather, in reversing a trial court's factual conclusions, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Stobart v. State through Dept. of Transp. And Development*, 617 So.2d 880, 882 (La. 1993).

### *Fraud*

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. C.C. art. 1953. "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence." La. C.C. 1957. "The party against whom rescission is granted because of fraud is liable for damages and attorney fees." La. C.C. art. 1958. The existence of fraud is a question of fact; thus the trial court's determination of fraud or its absence is subject to the manifest error standard of review on appeal. *Monroe v. Mc Daniel*, 16-0214, p. 8 (La.App. 5 Cir. 12/0716), 207 So.3d 1172, 1178 (citation omitted).

"The seller also warrants that the thing sold is fit for its intended use." La. C.C. art. 2475. "The seller must deliver to the buyer things that conform to the contract. Things do not conform to the contract when they are different from those selected by the buyer, or are of a kind, quality, or quantity different from the one agreed." La. C.C. art. 2603. "The seller must deliver the thing sold in the condition that, at the time of the sale, the parties expected, or should have expected, the thing to be in at the time of delivery, according to its nature." La.

4

C.C. art. 2489. "When the thing the seller has delivered . . . is not of the kind or quality specific in the contract or represented by the seller, the rights of the buyer are governed by other rule of sale and conventional obligations." La. C.C. art. 2529.

In an October 14, 2016 email, Mr. Smith assured River Rental that he had arranged for the engine supplier to convert the engines from 24 volt to 12 volt. This was not true. In that same October 14, 2016 email, Mr. Smith promised that the engines would be ready to ship "by the end of next week." This was also false. The engines were not ordered from the supplier until October 25, 2016. Mr. Smith claimed that National Equipment Sales, Inc. had shipped the wrong engines to him, sending 60 hp engines instead of 125 hp engines. However, Mr. Smith allowed these engines to be shipped, despite knowing they were the wrong engines before they were shipped.

On November 14, 2016, Mr. Smith informed River Rental that the engines were in, and he was only waiting on radiator kits, which he wouldn't have until December 1, 2016. However, Mr. Smith did not have the engines that River Rental wanted. It was not until December 6, 2016 that Mr. Smith contacted Stour 2, LLC about purchasing the engines needed by River Rental. The engines were not ready to ship until January 12, 2017. In the end, Smith Power provided River Rental with engines, which were completely inoperable, and could not be made operable for River Rental's repowered pumps.

Mr. Smith induced River Rental to pay for two engines in full, did not order any engines for River Rental, used River Rental's funds for the sole benefit of Smith Power, and then provided River Rental with unusable engines. During the entire transaction, Mr. Smith misrepresented facts to River Rental and suppressed

5

the truth regarding Smith Power's use of River Rental's funds, and the fact that the engines had not been converted to 12 volts, and other issues. Based on these facts, the trial court was not clearly wrong or manifestly erroneous in finding that Smith Power had committed fraud.

Smith Power produced no evidence to support its claim of fraud against River Rental as the customer of Smith Power. River Rental advised Smith Power that it was doing a re-power of some pumps, using the old pumps. River Rental was not using the surplus engines on new pumps. The surplus engines were to be used for pumps and used parts, and were going to be placed upon the skids which had rusted out. Smith Power advised River Rental that it could use a tier 2 mechanical engine if it was replacing an old tier 2 engine, and that was River Rental's plan for the project. There is no evidence that River Rental tried to circumvent any EPA regulation or other law. We find no error in the trial court's finding that River Rental did not commit fraud.

### *Louisiana Unfair Trade Practices Act*

To establish a claim under the Louisiana Unfair Trade Practices Act (LUTPA), a plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. *Agrifund, LLC v. Radar Ridge Planting Co., Inc.*, 52,432, p. 29 (La.App. 2 Cir. 7/17/19), 278 So.3d 1025, 1044 (citations omitted). To sustain a cause of action under LUTPA, the Supreme Court has promulgated a two-part test: 1) the person must suffer an ascertainable loss; and 2) the loss must result from another's use of unfair methods of competition and unfair or deceptive acts or practices. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, p. 10 (La. 4/23/10), 35 So.3d 1053, 1059.

6

Any person who suffers an ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. La. R.S. 51:1409(A).

The manifest error standard of review applies to the review of claims under the Unfair Trade Practices and Consumer Protection Law, preventing the Court of Appeal from disturbing the trial court's findings of fact and evaluations of credibility that have a reasonable basis in the evidence. *Doland v. ACM Gaming Co.*, 05-427, p. 8 (La.App. 3 Cir. 12/30/05), 921 So.2d 196, 202 (citation omitted).

In the instant case, Smith Power engaged in a number of actions that could be considered unethical and unscrupulous conduct that would be covered under LUTPA. These actions include: obtaining funds from River Rental for the purchase of engines and then using those funds to purchase engines for a different customer; informing River Rental that Smith Power had the engines converted to 12 volt when the engines had not been procured; failing to convert the engines to 12 volt, despite assurances that Smith Power would convert the engines to 12 volt; informing River Rental that the engines had been delivered, when in fact they had not even been located yet; and informing River Rental that the sale was "as is" when Smith Power delivered nonconforming products.[1]

---

[1] "A buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have." La. C.C. art. 2548.

Considering the foregoing facts, we cannot say that the trial court was either clearly wrong or manifestly erroneous in finding that Smith Power had violated the Louisiana Unfair Trade Practices Act.

### *Absolute Nullity*

Smith argues the contract is absolutely null as it violates a rule of public order, as when the object of a contract is illicit or immoral. *See* La. C.C. art. 2030. The object of the sale was two engines. Neither the engines at issue, nor their sale was illicit or immoral. They were sold on the open market. Their sale violated no statute or law. Although Smith argues that River Rental was going to use these engines to allegedly circumvent environmental regulations, there is no proof of that and the argument is too speculative to make the object of the sale or the sale itself either illicit or immoral.

The trial court could not have ruled on the alleged absolute nullity of this contract of sale, as illegality of the contract was not plead by Smith Power. Illegality is an affirmative defense that must be raised in the answer. La. C.C.P. art. 1005.

### *Additional Damages*

The trial court awarded additional damages of $13,366.88 to River Rental. This was to compensate River Rental for charges for merchandise from a third party. River Rentals admits that it ordered part/accessories from a third party, but they were never received or were defective. River Rental also never paid for these part/accessories. As such, the trial court was manifestly erroneous in awarding $13,366.88, in additional damages because those damages were never incurred by River Rental.

8

***Attorney's Fees on Appeal***

A plaintiff who is awarded damages and attorney's fees in an action under the Unfair Trade Practices Act, and then successfully defends an appeal of that action, is entitled to additional attorney's fees incurred in connection with the appeal. *See Laurents v. Louisiana Mobile Homes, Inc.*, 96-0976, p. 12 (La.App. 3 Cir. 2/5/97), 689 So.2d 536, 543. In the instant case, River Rental was awarded damages and attorney's fees under LUTPA. However, there were additional issues raised in Smith Power's appeal and River Rental did not successfully defend all of those issues. Accordingly, we will not award any additional attorney's fees on appeal.

**CONCLUSION**

For the above and foregoing reasons, we affirm the trial court's judgment in rescinding the contract between the parties and finding that defendant, Smith Power, committed fraud and violated LUTPA. We further affirm the trial court's damage awards to the plaintiff, River Rental, of $18,581.10 (return of purchase price for the engines) and $20,950.00 (attorney's fees). We also affirm the trial court's dismissal of the defendant's reconventional demands. However, we reverse and vacate the trial court's award of $13,366.88 in additional damages to the plaintiff. We also deny the plaintiff's request for additional attorney's fees associated with the appeal of this matter.

**AFFIRMED IN PART; REVERSED AND VACATED IN PART**