601 So.2d 724 (1992)
Adolph J. MAIER, Jr.
v.
CMS & ASSOCIATES, INC. and Corbesco, a Partnership.
No. 92-CA-14.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1992.
Rehearing Denied June 17, 1992.
*725 Paul S. Fiasconaro, Fiasconaro & Fiasconaro, New Orleans, for plaintiff/appellant Adolph J. Maier, Jr.
David C. Loeb, Chehardy, Sherman, Ellis & Breslin, Metairie, for defendant/appellee CMS & Associates, Inc. and Corbesco, A Partnership.
Before GRISBAUM, DUFRESNE and CANNELLA, JJ.
*726 CANNELLA, Judge.
Appellant, Adolph J. Maier, appeals from a judgment in favor of appellees, CMS & Associates, Inc. and Corbesco, a Partnership, dismissing his suit for declaratory judgment relative to a subordinated capital debenture for the year 1989. For the reasons which follow, we reverse the lower court judgment.
Appellant was in business for thirty-one years with F. Dixon Schweinfurth and Clifford L. Cutrell. They were involved in several businesses, including the parent holding company, CMS and Associates, Inc., two subsidiaries, Delwall, Inc., and Corbesco, Inc., and a separate company, Corbesco Partnership. Appellant had a 42.5% interest in the businesses.
In August of 1984 appellant notified his partners that he was going to retire and he did so on August 2, 1985. Appellant received a note which called for monthly payments of $10,000.00 as part of the buy-out arrangements for his share of the businesses. Thereafter, disputes arose over other payments and the values of certain assets. Appellees defaulted on the note and appellant filed two suits over their differences. The litigation had an adverse effect on the financial condition of their business and a settlement was sought by all. Among other transactions, appellant gave up his stock in CMS and Delwall, Inc. and his claim for $87,868.52 in the Delwall, Inc. liquidation. In exchange, on November 17, 1988, CMS issued to appellant a Subordinated Capital Debenture. When the parties could not agree on the meaning of the provisions in the debenture, the suit herein was filed to determine under what conditions payment to appellant was due.
In the debenture, CMS agreed to pay to appellant the principal sum of $175,000.00, with payments to commence in 1989 and to continue annually until paid. It provided, however, that payment was subordinated to the "Current Maturities of Senior Indebtedness (principal only)", and that "a payment of principal and/or interest for any given fiscal year shall be made only when there is a positive cash flow pursuant to the following formula."
Net income after taxes of
 CMS and Associates,
 Inc. and its subsidiaries (add)
Net income after taxes of
 Corbesco Partnership (add)
Current maturities of Senior
 Indebtedness (principal
 only) (subtract)
Bonus to present or future
 owners of CMS and
 Associates, Inc. or Corbesco
 Partnership (add)
 _____
Cash Flow
50% .50
 ____
Amount to be paid to subordinated
 capital debenture
 of Adolph J. Maier,
 Jr. ____
The debenture provided that reimbursement of advances by Cutrell to CMS could not exceed $50,000.00 in any fiscal year. Also, "salaries shall be allowed" Cutrell and Schweinfurth in the amount of $88,000.00 per year each.
As of March 31, 1989, the parties stipulated that the net income after taxes of CMS and its subsidiaries was $202,148.00 and of Corbesco Partnership was $560,496.00. No bonuses to anyone or salaries to Cutrell or Schweinfurth were paid and no reimbursements to Cutrell were made in the years ending in 1989 or 1990.
The main disagreement between the parties involves an interpretation of "Current maturities of Senior Indebtedness." They also disagree as to whether the "salaries" should be deducted under the debenture even if they are not paid in that fiscal year.
Appellant argues that there are no "Current Maturities of Senior Indebtedness" and that a "0" should be placed in that blank in the formula for the year 1989. The Senior Indebtedness is defined in the debenture as "comprising all existing obligations of the Company for money borrowed." Appellant argues that only CMS comprises "the Company" and only its existing obligations constitute the senior indebtedness. CMS had no existing obligations due on the date the debenture was issued.
*727 Appellees argue that there were three separate obligations in existence on the day the debenture was issued and that these constitute the "Senior Indebtedness" referred to in the debenture. The first obligation was a $500,000 line of credit loan of Corbesco, Inc. to Hibernia National Bank. The money was borrowed prior to November 17, 1988 and was represented by a demand note due August 31, 1989. CMS guaranteed the loan and issued a collateral mortgage to secure its indebtedness. The second obligation ($200,000) is allegedly owed by one subsidiary, Corbesco, Inc., to another subsidiary, Delwall, Inc., (or, since its liquidation, to Delwall Shareholders, Schweinfurth and Cutrell). The funds were acquired during the Delwall liquidation and reported as 1099 dividends to the shareholders, for which they paid taxes. However, the funds were never actually delivered to the shareholders. Mr. Maier's share of these funds would have been $87,868.52. The third obligation is a long term debt, secured by a real estate mortgage, which Corbesco Partnership owes to Hibernia. Appellees argue that all three of these obligations, constitute the senior indebtedness.
Appellant filed a Suit On A Debenture And Guaranty Agreement against appellees on October 31, 1989. Stipulations were filed on February 25, 1991 which modified the suit to an action for Declaratory Judgment. The trial judge held that "no payment was due in accordance with the terms of the debenture agreement" for the fiscal year ending in March, 1989. He did not expressly resolve all questions of ambiguity in the debenture. In holding that there was no positive cash flow pursuant to the formula to pay the debenture in 1989, by implication, he found that the two obligations ($500,000 and $200,000)[1] were intended by the parties to be included as Senior Indebtedness under the debenture. He also found that the parties intended that the salaries of Schweinfurth and Cutrell be deducted from the formula, whether paid or not. Otherwise, a positive cash flow would have resulted and some payment to appellant would have been due. On appeal, we are asked to review the trial court's interpretation of the terms of the debenture.
When a case presents a question of interpretation of a document, the courts must look to La.C.C. arts. 2045-2057, for guidance. Particularly, La.C.C. art. 2045 provides:
Interpretation of a contract is the determination of the common intent of the parties.
The "Revision Comments" to La. C.C. art. 2045 further provide that "[u]nder this article, the parties' common intent is deemed objective in nature, which means that in some cases it may consist of a reconstruction of what the parties must have intended, given the manner in which they expressed themselves in their contract." The provisions of a contract are to be interpreted to give them effect, La.C.C. art. 2049[2]. The contract as a whole must be considered in interpreting each provision. La.C.C. art. 2050, quoted ante.
In applying these principles to the instant case, we find that appellant's argument that there are no "Current Maturities of Senior Indebtedness" lacks merit. Such an interpretation would be at odds with the obvious intent of the document as a whole, that is, to provide a pay-out plan for appellant that is subordinate to some prior obligation(s). The document is entitled, "Subordinated Capital Debenture". (emphasis added). It provides that payment of the debenture "is hereby expressly subordinated to the prior payment of ... all existing obligations of the Company for money borrowed". It is clear that the parties contemplated that some obligation(s) would prime appellant's payout. The question is which prior obligations were intended by the parties *728 to precede payment to appellant and under what circumstances should "salaries" be included.
In looking to the intent of the parties, appellant's contentions concerning the $500,000 debt are not supported by the record. Appellant himself testified that he understood that his payment would be subordinated to the $500,000 Hibernia debt, notwithstanding that it was a debt of Corbesco, Inc. and not a debt of CMS. His attorney asked him what items he considered to be included as "current maturities of senior indebtedness". He answered:
The company is defined as CMS Associates, Inc. The only debt that we had considered earlier was evenit's not a debt of CMS, Inc.Associates Inc., but we considered a debt of five hundred thousand dollars as being the onlyI considered it as being the only money that was borrowed by the companies as a whole.
The whole record fully supports this finding. The $500,000 line of credit was in favor of Corbesco, Inc. and the note for the obligation was signed by Corbesco, Inc. However, Corbesco, Inc. is a wholly owned subsidiary of CMS. CMS is nothing more than a holding company. Accounting principles require a consolidated financial statement for such companies. CMS guaranteed the $500,000 Hibernia obligation and issued a collateral mortgage in favor of Hibernia to secure the obligation. Furthermore, the history of the creation of the debenture indicates that this Hibernia debt was the primary senior indebtedness with which the parties were concerned. In the settlement negotiations preceding the issuance of the debenture, Hibernia was a party. The goal of the settlement was to increase the working capital of the company, with security for Hibernia, and yet facilitate payment to appellant. As a result, Hibernia released appellant from his personal obligation on the debt. Hibernia would not have released appellant if it were not intended that his payment would be subordinate to the Hibernia obligation. Therefore, it is clear from the record that the parties' common intent under the debenture was that the $500,000 obligation to Hibernia be considered "Senior Indebtedness".
Under the debenture formula, a sum designated as "Current maturities of Senior Indebtedness (principal only)" is to be subtracted from the net income figure. Pertaining to this obligation, the trial court used the whole $500,000 as representing that sum. The trial court was not clearly wrong in doing so.
Appellant's payment is subordinated to this prior obligation. The obligation is represented by a short term note that is due in full within 12 months of the financial statement.[3] If paid, the whole payment would have been included. But it was not paid. Instead it was renewed by another short term note. Nevertheless, the formula calls for "current maturities" of the debts and, as testified to by the experts, Mr. Smith and Mr. Glynn, current maturity of debt is that which will become due within one year of the date of the financial statement. In this case, because of the short term nature of the debt, it is the whole $500,000.[4]
Appellant argues that the formula represents a "cash flow" statement and, as such, only debts actually paid can be deducted. Appellant's expert, Mr. Spath, testified that this is the procedure for cash flow statements. The debenture provides *729 that payment "shall be made only when there is a positive cash flow pursuant to the following formula." While appellant is correct that the debenture uses the words "cash flow", we do not think the intent was to create a cash flow formula.
La.C.C. art. 2050 provides:
Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.
The formula itself calls for "current maturities" of debt, which is inapposite to a cash flow statement. Further, the evidence indicates that the intent was for the company to be able to maintain working capital, but to pay appellant if the net income exceeded the debt to which his debenture was subordinated. The words "cash flow" were not used as words of art to create a cash flow statement, but rather, were used simply to refer to cash remaining after the required formula calculations. Accordingly, the trial court was correct in using the $500,000 figure for the short term Hibernia loan as a current maturity of senior indebtedness for the fiscal year ending in 1989.
However, appellant's arguments concerning the $200,000 debt from Corbesco, Inc. to Delwall shareholders and the long term Hibernia debt have merit. Appellant testified that he did not consider either of these debts to be included as "senior indebtedness" under the debenture. He stated that it was never his intent and, to the contrary, he has continuously objected to the $200,000 sum being treated as a loan.[5] Appellees presented no contradictory evidence concerning the parties intent to include these loans as "senior indebtedness". Appellees' experts testified that they would include the $200,000 sum as a senior indebtedness because it was listed as a debt of a subsidiary. But, even one of them conceded that the long term Hibernia debt would not be included because it was a debt of Corbesco Partnership which was not a subsidiary of CMS. Further, there is no documentation concerning the $200,000 sum, that is, no loan agreement, no note evidencing the debt, no interest payments and no corporate minute entry. The creditor corporation has been liquidated and no longer exists. A previous CMS tax return shows no funds owed to Delwall. On one financial statement it is listed as an account payable and then later reclassified as a debt. The experts testified that the sum could be reclassified as equity and probably would be treated as equity by the IRS under its Guidelines of Debt or Equity.
The actions of the parties also support a finding that the $200,000 sum was not intended to be "senior indebtedness". Prior to the settlement that led to the issuance of the debenture, appellant owned a portion of that sum ($87,868.52). He had even paid income taxes on it although he had not received it. Considering the actions of the parties to determine their intent (La.C.C. art. 2053[6], appellant would not have given up his right to $87,868.52 for the debenture if he had thought he was subordinating his payment to payment of the entire $200,000 first to his partners.
The interpretation of a contract is a question of fact. Brignac v. Eberts, 529 So.2d 1321 (La.App. 5th Cir.1988). It is well settled that a court of appeal may not set aside a finding of fact of a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong". Where documents or objective evidence so contradict the witnesses' story, the appeal court may find manifest error even in a finding purportedly based upon a credibility determination. Rosell v. Esco, 549 So.2d 840 (La. 1989). Accordingly under Rosell v. Esco, supra, we find that the documents and objective evidence so contradict the trial court finding, that the $200,000 was intended *730 to be included in the debenture as senior indebtedness, that the trial court was clearly wrong in this determination.
Likewise, the documents and evidence do not support a finding that the long term Hibernia debt of Corbesco Partnership was intended to be included as "senior indebtedness." There is no evidence concerning this debt in the record. It is referred to as a debt of Corbesco Partnership which is a separate entity from CMS and its subsidiaries. And, there is no testimony in the record indicating that anyone intended that this debt be considered "senior indebtedness". Appellees' own expert conceded this point. Therefore, we find it should not be considered in the formula.
Lastly, we come to the issue concerning the provision in the debenture relating to the salaries of Schweinfurth and Cutrell. Appellant argues that it was only intended to create a ceiling, to limit the amount they could take as salaries. Appellees concede that it was intended to create a ceiling, but it was also intended to create a floor; they could deduct that amount from the formula whether the salaries were taken or not. As stated previously, under La.C.C. art. 2045, the common intent of the parties is the fundamental question. La.C.C. art. 2047 provides "words of a contract must be given their generally prevailing meaning." And La.C.C. art. 2053 requires interpretation of a contract in light of the parties actions and the nature of the contract.
Cutrell and Schweinfurth did not draw their salaries in 1989 in an effort to increase the working capital of the company. The company previously had financial problems and they were attempting to revive it. Certainly, they would not have given up their salaries if they believed the money would go to pay the debenture instead. As evident by their actions, it was their intent that the salaries be deducted from the formula, whether paid or not. This position is consistent with the history of the events leading to the issuance of the debenture, that every effort was being made to increase the working capital of the company, but also to pay the debenture if sufficient funds were available.
Appellees argue that this result should continue in future years even though Schweinfurth has retired. We disagree. As stated above, the words of the contract must be given their common meaning. Black Law Dictionary, 6th ed., 1991, defines salary as "[a] reward or recompense for services performed." (emphasis added). Where one party has retired and is no longer performing services for the company, no sum may be deducted for his "salary" under the debenture formula. Accordingly, the trial judge was correct in including the salaries in the calculations under the formula for the fiscal year ending in 1989, even though they were not paid.
For the foregoing reasons, the judgment of the district court, finding no payment due appellant under the debenture for the fiscal year ending in 1989 is reversed and payment is ordered in accordance with the views expressed herein.
REVERSED AND RENDERED.
NOTES
[1] It is not clear from the judgment whether the court found the third obligation, the long term debt to Hibernia, was intended to be included as "senior indebtedness" or not.
[2] La.C.C. art. 2049 provides:

A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.
[3] If it were a long term debt amortized over a specific period, then the result would be different. However, appellant admitted that the loan was not amortized.
[4] Appellant expressed concern that this interpretation would effect an unjust result because by renewing the debt annually appellees can prevent appellant from ever being paid. Appellant's fears are unfounded. Appellant's payment is subordinated to the $500,000 debt existing as of November 17, 1988. Once the subordination has occurred, as here, for the whole $500,000 for 1989, that sum can not again be deducted in the formula in calculating available cash from net income for the debenture payment. If the $500,000 was again deducted, the effect would be to subordinate appellant's payment to a $1,000,000 debt and that was clearly not the intent of the parties. The debt for $500,000 was fixed at the time the debenture was issued, November 17, 1988.
[5] This was the very issue raised in the earlier litigation.
[6] La.C.C. art. 2053 provides:

A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.