HEALTHLOGIC PARTNERS, L.L.C.

VERSUS

KIMBERLY OWEN

NO. 22-CA-47

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 770-536, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

November 02, 2022

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Hans J. Liljeberg

**AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART;**
**DISMISSED IN PART; AND REMANDED**
    **FHW**
    **SMC**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
HEALTHLOGIC PARTNERS, L.L.C.
    Albert J. Nicaud
    Jeffrey M. Siemssen
    Bret D. Guepet, Jr.

COUNSEL FOR DEFENDANT/APPELLANT,
KIMBERLY OWEN
    Clarence F. Favret, III
    James C. Cronvich

**WICKER, J.**

This appeal arises from a contract dispute involving the acquisition of an out-of-state pharmacy. Appellant Kimberly Owen ("Ms. Owen") seeks review of the trial court's November 2020 judgment finding in favor of plaintiff Healthlogic Partners, LLC ("HLP") and against Ms. Owen for breach of contract, violating Louisiana's Unfair Trade Practices Act ("LUTPA"), and damages. Ms. Owen also seeks review of the trial court's May 2021 denial of her motion for new trial and the trial court's October 2018 contempt judgment.

On appellate review, we find no error in the trial court's judgment finding Ms. Owen in breach of contract and liable for damages; however, we find the record lacks sufficient evidence to support the trial court's finding Ms. Owen in violation of LUTPA. Consequently, we also find the trial court's granting of HLP's motion to fix costs, awarding HLP attorney's fees pursuant to La. R.S. 51:1409(A), was in error. We further find no error in the trial court's denial of Ms. Owen's motion for new trial and find Ms. Owen's appeal of the trial's court contempt judgment is untimely. Accordingly, we affirm in part and reverse in part the trial court's November 2020 judgment; affirm the trial court's May 2021 judgment denying the motion for new trial; dismiss as untimely Ms. Owen's appeal of the trial court's October 2018 contempt judgment; vacate the trial court's award of attorney's fees under La. R.S. 51:1409(A); and remand the matter for further proceedings in line with this opinion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2016, Ms. Owen, a domiciliary of Virginia, was employed by Gardens Pharmacy ("Gardens") located in Virginia Beach, Virginia, when she was presented with the opportunity to purchase the pharmacy. Ms. Owen contacted an acquaintance from her previous work in pharmaceutical sales, Matt Skellan of HLP, a company formed to scale the business of privately owned pharmacies, to discuss

the opportunity. Mr. Skellan indicated that he and his HLP business partners, Jourdan Generes and Louis "Val" Generes ("Val Generes"), were also interested in acquiring a pharmacy. According to testimony at trial, Mr. Skellan expressed HLP's interest in forming a business relationship with Ms. Owen to pursue Ms. Owen's acquisition opportunity.

HLP alleged in their petition that at all relevant times the parties agreed to share the profits equally or 25% to Ms. Owen and 75% to HLP, split equally among its members. Part of the negotiation process was the understanding that Ms. Owen would be the resident owner and HLP would be responsible for setting up, structuring, and managing the pharmacy. On August 16, 2016, in preparation of the pharmacy purchase, HLP, on behalf of Ms. Owen, formed the Delaware limited liability company, Precision Pharmacy, LLC ("Precision"). Ms. Owen was the sole member and owner of Precision.

Thereafter, HLP flew to Virginia to conduct due diligence on Gardens. It was determined that acquisition of Gardens was not in their best interest because Gardens had debt and existing obligations. During its evaluation of Gardens, HLP learned of another pharmacy, GenX Pharmacy, LLC ("GenX"), that was located in the same building as Gardens and that was not being utilized. The parties determined the purchase of GenX was a wiser option because it had no liabilities. Therefore, it was decided that Precision would acquire GenX, and GenX would subsequently acquire the assets of Garden Pharmacy.

During this time, Gardens' owner had contacted the Virginia Board of Pharmacy, notifying of its intent to close the business, which required a closing inspection and a specific closing date. As a result, September 16, 2016, became the deadline by which Gardens' owner had to close the pharmacy and/or sell it. In light of the impending deadline, the parties understood that time was of the essence to complete the purchase of GenX. The deadline, however, did not provide sufficient

time for the parties to negotiate and draft all of the legal documents necessary to reflect their ultimate goals. Consequently, HLP submitted a Letter of Intent ("LOI") to Ms. Owen, outlining the intent of the business arrangement and its operational structure.

On September 1, 2016, Ms. Owen proposed revisions to the LOI, some of which HLP accepted and others it did not. HLP forwarded a revised LOI, which Ms. Owen signed and dated on or about September 6, 2016. Upon receipt, Val Generes executed the LOI on behalf of HLP.

The LOI stipulates that it is a binding agreement between HLP and Ms. Owen. The terms of the LOI indicate that Ms. Owen agreed to purchase 100% of GenX. Ms. Owen then agreed to enter into an exclusive Master Service Agreement ("MSA") with HLP. Further, Ms. Owen and HLP would form an Operating Agreement ("OA") relating to the operation and management of GenX. The OA for GenX would require naming the members of HLP to GenX's board. In exchange, HLP would provide all legal documents necessary to complete the purchase of GenX and act as the exclusive management company. The LOI also anticipated that the MSA and OA would require further negotiations, and set forth a provision that should additional negotiations be needed, both parties would negotiate in good faith.

On or about October 19, 2016, HLP forwarded to Ms. Owen a draft of the MSA and OA. Given that Ms. Owen had yet to sign the MSA or OA, Val Generes emailed Ms. Owen for a status update on November 15, 2016. At some point thereafter, Ms. Owen retained attorney Robert Goodman ("Mr. Goodman") to review the documents. On January 10, 2017, Ms. Owen emailed Val Generes, informing him that she was scheduled to meet with her attorney the next day to discuss portions of the agreements that her attorney thought Ms. Owen "may want to consider tweaking or removing."

According to Ms. Owen, she was advised that the business arrangement

described in the MSA and OA violated Virginia and federal pharmacy laws, and GenX needed to cease operating in that manner. The day after Ms. Owen's meeting, Attorney Goodman emailed HLP's attorney to request a phone call. HLP, through their counsel, advised Attorney Goodman that the members of HLP would participate in the call. Attorney Goodman responded that Ms. Owen would not be present on the call in that the discussion would be "all legal."

On the January 12, 2017 conference call, Ms. Owen's attorneys expressed their concerns with the legality of the drafted agreements. At trial, Val Generes confirmed that counsel for Ms. Owen indicated that she did not want to proceed under the current structure because it was her attorneys' legal opinion that the business arrangement did not comply with all applicable laws. The parties dispute whether there were further attempts to address Ms. Owen's legal concerns and potential changes to the pharmacy's operations. Even so, the parties ultimately entered into settlement negotiations but to no avail.

After settlement negotiations proved unsuccessful, in March 2017, HLP filed a petition for breach of contract, specific performance, fraudulent inducement, and unjust enrichment. In February 2018, after Ms. Owen had failed to file an answer to HLP's petition, HLP filed a motion for preliminary default. Ms. Owen subsequently filed her answer; however, she did not respond to HLP's discovery requests, prompting HLP to file a motion to compel production. A consent judgment ordering Ms. Owen to respond to HLP's discovery requests was entered in May 2018. When Ms. Owen failed to respond, HLP filed a motion for contempt of court and sanctions. In August 2018, the trial court granted HLP's motion for contempt, ordering Ms. Owen to respond within 24 hours of judgment. HLP filed a second motion for contempt of court and sanctions when Ms. Owen failed to provide responses to HLP's discovery requests pursuant to the trial court's August 2018 order. The trial court granted HLP's second motion for contempt of court and sanctions in October

2018 and ordered Ms. Owen precluded from producing at trial any additional documents not previously produced in discovery.

A two-day bench trial was held on September 21, 2020, and October 7, 2020, on HLP's petition. Following trial on the merits, the trial court rendered judgment on November 30, 2020. The trial court found Ms. Owen in breach of contract with HLP, in violation of LUTPA, and liable for damages in favor of HLP in the amount of $1,704,072.00. However, the trial court dismissed with prejudice HLP's fraud claim, finding HLP did not meet its burden of proof.

Ms. Owen filed a motion for new trial, which the trial court denied in June 2021. In light of the trial court finding Ms. Owen violated LUTPA, HLP subsequently filed a motion to fix attorney's fees and costs pursuant to LUTPA, which the trial court granted on July 20, 2021. Ms. Owen subsequently moved for a devolutive appeal. Ms. Owen's appeal to this Court follows.[1]

### DISCUSSION

Ms. Owen appeals the trial court's November 30, 2020 judgment finding her liable for breach of contract and in violation of LUTPA. Ms. Owen also appeals the trial court's June 2, 2021 judgment denying her motion for new trial and the trial court's October 2018 contempt judgment. Ms. Owen raises six assignments of error including: (1) the trial court committed manifest error when it found Ms. Owen was personally obligated to perform under the LOI; (2) the trial court committed legal error when it failed to consider whether Precision's purchase of GenX effected a subjective novation of the LOI and whether HLP pierced the corporate veil; (3) the

---

[1] In her brief to this Court, Ms. Owen indicates that her appeal is from the November 30, 2020 judgment and the trial court's June 2, 2021 denial of her motion for new trial. Ms. Owen's motion for devolutive appeal sought review of the trial court's November 30, 2020 judgment award of damages and findings of liability, and incidentally, the July 20, 2021 judgment awarding statutory attorney's fees to HLP; the June 2, 2021 judgment denying Ms. Owen's motion for new trial; the December 10, 2019 judgment denying her peremptory exception of no cause of action; the November 17, 2018 judgment granting HLP's second motion for contempt; and the October 27, 2017 denying Ms. Owen's motion to disqualify HLP's attorney.

trial court committed manifest error when it found Ms. Owen's failure to sign the OA and the MSA satisfied the criteria for bad faith and unfair trade practices; (4) the trial court committed manifest error when it found Ms. Owen breached the LOI when she failed to sign or attempt to negotiate the terms of HLP's draft OA and MSA; (5) the trial court abused its discretion when it denied Ms. Owen's motion for new trial; and (6) the trial court abused its discretion when it prohibited Ms. Owen from introducing documentary evidence pursuant to a previously issued discovery sanction.

### *Letter of Intent*

In her first assignment of error, Ms. Owen claims that the trial court erred when it determined she was personally obligated to perform under the LOI. Whether Ms. Owen was personally liable under the LOI is a question of fact. "Factual determinations of the trier of fact may not be reversed absent manifest error or unless they are clearly wrong." *Pinsonneault v. Merchants & Farmers Bank & Tr. Co.*, 01-2217, p. 11 (La. 4/3/02), 816 So. 2d 270, 278 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989)). The appellate court must determine, after review of the record in its entirety, whether a reasonable factual basis exists for the trial court's conclusion. *Id.* "The appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently." *Id.*, 01-2217, p. 11, 816 So.2d at 279 (citation omitted). In *First Bank & Tr. v. Treme*, 18-477, p.17-18 (La. App. 5 Cir. 12/19/18), 262 So. 3d 1050, 1062, this Court explained:

> Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. *Varmall v. Bankers Specialty Ins. Co.*, 15-223 (La. App. 5 Cir. 10/28/15), 178 So.3d 181, 183-84 citing *Waguespack v. Sentry Select Ins. Co.*, 12-280 (La. App. 5 Cir. 11/13/12), 105 So.3d 880, 884-85, writ denied, 12-2700 (La. 2/8/13), 108 So.3d 90. Moreover, where there are two permissible views of the evidence, the fact finder's choice between them cannot be

manifestly erroneous. *Id.*, 178 So.3d at 184. It is only where the objective evidence so contradicts a witness' testimony, or the testimony itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it, that the court of appeal may find manifest error even in a finding purportedly based upon a credibility determination. *Id.*

When an appellate court finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required, whenever possible, to re-determine the facts *de novo* from the entire record and render a judgment on the merits. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742, 745. While great deference should be accorded to the fact finder, appellate courts have a constitutional duty to review facts. To perform this constitutional duty properly, the appellate court must determine whether the lower court's conclusions were clearly wrong based on the evidence or are clearly without evidentiary support. *Stewart v. State through Dept. of Transp. & Dev.*, 08-0772 (La. App. 1 Cir. 3/20/09), 9 So.3d 957, 963, writ denied, 09-1228 (La. 9/18/09), 17 So.3d 968.

*Id.*

HLP argued at trial that Ms. Owen was personally bound by the LOI. Ms. Owen, on the other hand, understood their agreement differently. Ms. Owen testified she had an oral agreement with the individual members of HLP wherein each would own 25% interest in the pharmacy and that the members were in breach of their oral agreement by requesting her to obligate herself under the LOI. She also testified that to the extent she signed the LOI, she did not intend to be bound personally. She stated that when she signed the LOI, she believed she was acting on behalf of Precision.

"Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "Under this Article, the parties' common intent is deemed objective in nature, which means that in some cases it may consist of a reconstruction of what the parties must have intended, given the manner in which they expressed themselves in their contract." Revision Comments, subsection (b) of La. C.C. art. 2045; *Maier v. CMS & Assocs., Inc.*, 601 So.2d 724, 727 (La. App. 5th Cir. 1992). Moreover, the determination of whether a contract is clear or ambiguous is a question of law. *Semco, LLC v. Grand Ltd.*, 16-342, p. 43 (La. App. 5 Cir. 5/31/17), 221 So.

3d 1004, 1035. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. *Sec. Ctr. Prot. Servs., Inc. v. Lafayette Sec. & Elec. Sys., Inc.*, 95-693, p. 6 (La. App. 5 Cir. 1/17/96), 668 So. 2d 1156, 1160; La. C.C. art. 1848. "If, on the other hand, the contract cannot be construed simply, based on its language, because of an ambiguity, the court may look to extrinsic evidence to determine the parties' intent." *Doerr v. Mobil Oil Corp.*, 00-0947, p. 5 (La. 12/19/00), 774 So. 2d 119, 124.

The intent of the LOI was to define the general obligations of each party as well as to establish the intended operating structure of GenX. HLP agreed to assist Ms. Owen in the purchase of GenX by providing all the legal documents to ensure its acquisition. In exchange, it was agreed that the parties would enter into an OA that would name HLP's members to GenX's board and HLP would act as the exclusive managing service company.

The LOI also stated that "[t]his Letter of Intent creates a binding contract." It stipulates that "Ms. Owen further agrees that this Letter of Intent shall be binding upon any of her related companies, assigns relatives, and/or the like." The parties also contemplated that the final terms of their agreement would require further negotiations and therefore, the LOI included a provision that all parties would negotiate in good faith in finalizing the formal business arrangement.

The "words of a contract must be given their generally prevailing meaning." La. C.C. art. 2057. The LOI considered the possibility of a new entity. It did not release Ms. Owen from the agreement; rather, it extended

the agreement to any additional parties that she may be related to. Ms. Owen is the sole member and owner of Precision. Additionally, Precision was formed in August 16, 2016, prior to the execution of the LOI. Louisiana has long held that "signatures to an obligation are not mere ornaments." *Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La. 1983) (internal quotations omitted). "[A] party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, did not understand it, or that the other party failed to explain it to him." *Whitney Bank v. Garden Gate New Orleans, L.L.C.*, 17-362, p. 11 (La. App. 5 Cir. 12/27/17), 236 So. 3d 774, 784.

If the intent was for Precision to be the proper party to be bound by the agreement, then the LOI should have reflected that intent. Similarly, comparison of the designations for each party's signature demonstrates the intent of the LOI. The LOI contains the following closing: "Yours truly, Healthlogic Partners, LLC." Below the closing is the signature of Val Generes. What follows is his printed name and title designation. "Louis 'Val' Generes" is written on the signature line and the designation below reads: "Title: Managing Member." In contrast, the signature line for acceptance of the terms of the LOI reveals Ms. Owen's signature and the designation below simply states: "Name: Kimberly 'Kimmy' Owen."

Contrary to her assertion, Ms. Owen was the proper party to the LOI. Ms. Owen signed the agreement in her personal capacity and not on behalf of Precision or any other company. Therefore, we find no manifest error in the trial court's finding Ms. Owen personally bound under the LOI.

### Novation

In her second assignment of error, Ms. Owen raises the affirmative defense of novation. Pursuant to La. C.C. art. 1883, novation takes place when a new obligor

is substituted for a prior obligor who is discharged by the obligee. Ms. Owen avers that when the parties established Precision as the purchaser of GenX, it effected a novation of the LOI. In support of her contention, she states that Ms. Owen was not a party to either the MSA or the OA that HLP prepared and submitted to Ms. Owen. HLP objects to this assignment of error, citing that the affirmative defense of novation is raised for the first time on appeal.

"As a general rule, appellate courts will not consider issues raised for the first time on appeal, which are not pleaded in the court below and which the trial court has not addressed." *Lepine v. Lepine*, 17-45, p. 8 (La. App. 5 Cir. 6/15/17), 223 So. 3d 666, 673 (citing *First Bank & Trust v. Treme*, 13-168, p. 8 (La. App. 5 Cir. 10/30/13); 129 So.3d 605, 610). In that Ms. Owen failed to raise this issue in the trial court, this Court is precluded from considering the merits on appeal. For the same reason, this Court will not consider whether HLP pierced the corporate veil of Precision.

### Bad Faith and Unfair Trade Practices

Ms. Owen also argues that the trial court erred in finding that her failure to sign the OA and MSA satisfies the criteria for bad faith and unfair trade practices. La. R.S. 51:1405(A) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "The purpose of LUTPA [Louisiana Unfair Trade Practices Act] is to protect consumers and to foster competition by 'halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry.'" *Monroe v. McDaniel*, 16-214, p. 10 (La. App. 5 Cir. 12/7/16), 207 So. 3d 1172, 1179 (quoting *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 13-1582, p. 22 (La. 5/7/14); 144 So.3d 1011, 1025).

What Louisiana courts deem a violation of LUTPA is determined on a case-

by-case basis. *Quality Envtl.*, 13-1582, p. 21, 144 So.3d at 1025. The Louisiana Supreme Court explained that "'the range of prohibited practices under LUTPA is extremely narrow,' as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence." *Id.* Further, "conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA." *Id.* "[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.*; *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09-1633, p. 12 (La. 4/23/10), 35 So.3d 1053, 1060. "A defendant's motivation is a critical factor—his actions must have been taken with the specific purpose of harming the competition." *Monroe*, 16-214, p. 10, 207 So.3d at 1180 (citing *Creative Risk Controls, Inc. v. Brechtel*, 01-1150, p. 7 (La. App. 5 Cir. 4/29/03), 847 So.2d 20, 24).

> HLP's first supplemental and amending petition for damages states:

> Defendant made a misrepresentation, suppression, or omission of true information by agreeing to enter into the Formal Agreements after the Act of Sale of GenX with the intent to obtain an unjust advantage over HLP and Defendant's misrepresentation induced HLP into entering the LOI and substantially performing its obligations to its detriment.

HLP argues that it was Ms. Owen's intent to unfairly "squeeze [HLP] out" of the partnership. Pursuant to the LOI, HLP provided Ms. Owen with the documents necessary to effect the purchase of GenX and served as the management company after the purchase. Additionally, Ms. Owen obligated herself immediately thereafter, or contemporaneous with closing GenX, to enter into the OA. Ms. Owen was also obligated to negotiate in good faith the MSA.

HLP maintains that Ms. Owen's testimony and the fact that Ms. Owen did not immediately enter into the OA with HLP proves that Ms. Owen intended to cut HLP out of the deal. HLP avers that Ms. Owen actively chose to disregard the LOI and failed to perform her obligation. HLP argues that not only was her failure to sign or attempt to negotiate the terms of the OA and MSA in good faith a breach of the LOI,

but also her failure to perform supports a finding of bad faith and unfair trade practices. HLP cites Ms. Owen's testimony that she had no obligation to HLP under the LOI. This assertion, HLP claims, is "littered throughout her testimony." HLP also relies on Ms. Owen's statement that HLP was not a priority to her as proof that she intentionally induced HLP to provide its services to effect the purchase of GenX, only to assume ownership of the business for herself.

In view of the record, HLP's abridged account of Ms. Owen's testimony does not accurately reflect the context of her testimony. It is true Ms. Owen stated on more than one occasion that she believed she had no obligation to HLP under the LOI. However, Ms. Owen's statement was in reference to her impression of the business arrangement at different points during the partnership. Ms. Owen stated that initially she had no obligation under the LOI because it was her belief that she and HLP had a binding oral agreement. She also testified that she personally had no obligation to HLP because she believed that she signed the LOI on behalf of Precision and not in her personal capacity. Furthermore, she explained that in January 2017, her attorney advised her that the business arrangement contemplated by the LOI, and reflected in the drafted OA and MSA, violated state and federal pharmacy regulations. She testified that at that time she believed she had no obligation to sign the drafted agreements because the agreements were legally unenforceable.

HLP also relies on Ms. Owen's testimony that HLP was not a priority for her. HLP suggests that this testimony illustrates that Ms. Owen never considered HLP as a business partner but rather a means to an end. Again, the inference HLP makes is not supported after review of Ms. Owen's testimony in full. Ms. Owen went on to explain that in the beginning, the order of operations was vital. The Virginia Board of Pharmacy required Gardens to cease operations or to be sold on or before September 16, 2016. Because it was intended for GenX to purchase Gardens' assets,

the parties understood that the acquisition of GenX would need to be complete before the deadline in order to avoid a gap in service for Gardens' patients. In light of the encroaching deadline, the parties agreed to prioritize the purchase of GenX. Ms. Owen testified that for better or worse her first priority was completing the purchase of GenX while also managing the day-to-day operations at the pharmacy's physical location to ensure there was no interruption of service to its patients.

A significant portion of Ms. Owen's testimony was devoted to what she believed the business arrangement to be at the time.[2] Ms. Owen's explanations as to why she believed she had no obligation to HLP goes to her state of mind. The issue central to this appeal is not what Ms. Owen believed at the time but whether Ms. Owen adhered to the LOI. Nevertheless, her testimony sheds light on Ms. Owen's motivation. Because a defendant's motivation is a critical factor considered by courts in determining a LUTPA violation, Ms. Owen's testimony as to why she did not sign the OA and MSA is relevant to whether HLP proved Ms. Owen violated LUTPA.

With this context, we consider the sufficiency of evidence supporting HLP's LUTPA claim. HLP argued at trial that "its damages stem from [Ms. Owen's] obligation to negotiate the drafted agreements. Her testimony was that she had no obligation whatsoever to sign the documents. Her testimony is that her first attorney that she hired was around January." Yet, the uncontroverted evidence is that Ms. Owen's attorney contacted HLP and its counsel to discuss his concerns that the OA and MSA were unlawful. Thus, HLP relies on the delay between when HLP forwarded the drafted agreements to Ms. Owen in October 2016 and when she first

---

[2] At trial, Ms. Owen represented herself. The trial judge exercised immense patience to ensure Ms. Owen understood what was transpiring. The trial judge also took great pains to make certain Ms. Owen was not disadvantaged by appearing *pro se*. Ms. Owen was given every opportunity to question and/or call witnesses. Likewise, the trial judge gave Ms. Owen every opportunity to be heard, allowing her to testify at length. At one point during Ms. Owen's testimony, the trial judge attempted to refocus Ms. Owen, explaining what she believed at the time was not at issue, but whether she had adhered to the LOI.

presented the documents to her attorney for review as evidence that Ms. Owen's intent to purposefully reject any type of OA or MSA establishes sufficient proof of bad faith and unfair trade practices.

Contrariwise, Ms. Owen argues that HLP's contention that it was harmed by the two months it took for her to retain counsel and review the agreements is not credible because HLP was operating GenX as though the agreements were signed and received a considerable amount of money during this period. Ms. Owen testified that once her attorney reviewed the documents, she learned that the operations of GenX were potentially unlawful, and she refused to sign the OA and MSA as drafted on that basis.

Given the record before us, we find at most, the evidence shows: (1) that Ms. Owen delayed hiring an attorney and sending him the agreements to review; and (2) that Ms. Owen relied on the advice of counsel. We consider first Ms. Owen's delay in retaining a lawyer to review the agreements.

*Delay in the Retaining of Counsel*

According to HLP, from the execution of the LOI until February 2017, Ms. Owen never provided HLP any indication that she would not sign the OA and MSA.

The LOI was executed on or about September 6, 2016. It states that Ms. Owen was obligated to execute the OA immediately after the purchase of GenX; however, HLP did not send Ms. Owen a copy of the drafted OA until on or about October 19, 2016—more than a month after she signed the LOI. There is no deadline set forth in the LOI, nor is "immediately thereafter" reasonably defined within the LOI's terms. Moreover, the record shows that Ms. Owen retained counsel on or before January 10, 2017, as evidenced by her email to HLP, indicating that her attorney had completed a review of the documents and wanted to discuss his concerns with her

the following day.[3] She further indicated that because the agreements were far more in depth than she anticipated, she expressed a desire to at least hear him out.

LUTPA claims are considered on a case-by-case basis, and Louisiana courts have routinely held that the conduct must be egregious. For instance, in *McFadden v. Import One, Inc.*, 10-952 (La. App. 3 Cir. 2/9/11), 56 So.3d 1212, the plaintiff entered a sales agreement for a new car on the condition the dealership could secure financing at the agreed upon terms. The plaintiff also agreed to trade in her current car. Although the dealership did not sign the sales agreement, the plaintiff was allowed to leave with the new car while the dealership retained possession of her vehicle. After the dealership was unable to secure financing for the plaintiff at the agreed upon terms, the dealership tried to coerce her into financing with different terms. The plaintiff refused and notified the dealership of her intention to return the new car and to have her old car returned to her. She attempted to return the new car on multiple occasions, but the dealership refused to return her car to her. Instead, the dealership continued to insist the plaintiff enter into a sales agreement with different terms. The dealership went a step further and sent the plaintiff a letter. The appellate court found the letter was essentially a threat that "if she would not 'satisfy' her 'required participation' in a sale that was not legally binding, it would falsely accuse her of a crime." *Id.*, 10-952, p. 11-12, 56 So.3d at 1221. The plaintiff again contacted the dealership to facilitate an exchange of the vehicles, but to no avail, as the dealership ultimately reported the new car stolen. Based on the false report, the police went to the plaintiff's place of work and in front of coworkers and clients, the plaintiff was questioned. The police, exercising better judgment than the dealership, elected to repossess the car rather than arresting her. On appellate review, the Second Circuit recognized that the determination of a violation of LUTPA is fact-

---

[3] Ms. Owen could not recall at trial when she hired her attorney to review the drafted OA and MSA, however, Ms. Owen's email to HLP demonstrates that at the latest, she hired an attorney on January 10, 2017.

sensitive and that holding the plaintiff's car hostage in order to coerce her into a sale was as disgraceful as it was deceptive; and thus, a violation of LUTPA.

Unlike the conduct in *McFadden*, the delay to hire an attorney to review documents for the purpose of forming a business partnership can hardly be defined as deceptive behavior, particularly where HLP presumed the need for further negotiations. The record reflects that no more than two and one-half months had passed from the time Ms. Owen received the drafted documents for her consideration to the time she sent them to her attorney to review. While we address separately later in this opinion whether the two and one-half month delay is sufficient to support HLP's breach of contract claim, we find the delay does not rise to the level of egregious conduct within the narrow meaning of LUTPA.

HLP also points to the fact that in February 2017 Ms. Owen created a new pharmacy, Sparrow Pharmacy, LLC ("Sparrow"), as evidence that Ms. Owen acted in bad faith and engaged in unfair trade practices. HLP suggests that the timing of Sparrow's formation is evidence that Ms. Owen intended to cut HLP out of the deal. HLP claims that the January 12, 2017 conference call with Ms. Owen's attorney is when it first learned that Ms. Owen wanted to part ways. Val Generes testified that at some point during the call the discussion turned towards settlement. HLP insists that after January 12, 2017, all subsequent communication was in contemplation of terminating the partnership and negotiating a settlement. Thus, by HLP's own account, the parties were already in settlement negotiations when Sparrow was formed. The argument that the timing of Sparrow's formation is evidence of her bad faith and unfair trade practices lacks merit.

*Advice of Counsel*

Additionally, Ms. Owen testified at trial that after her attorney's review of the drafted agreements, he advised her not to sign them because it presupposed an unlawful business arrangement. Whether the business arrangement was unlawful is

an entirely separate issue from whether relying on the advice of counsel constitutes egregious conduct.

HLP alleged at trial that the January 2017 conference call with Ms. Owen's attorney was the first time HLP learned that Ms. Owen was concerned about the legality of the drafted agreements. Val Generes admitted at trial that he was aware Ms. Owen was advised not to sign the OA and MSA because her attorney was of the opinion that the business arrangement violated Virginia and federal pharmacy laws. Val Generes' admission is the only time HLP acknowledges Ms. Owen's explanation for not signing the documents. Despite Ms. Owen's undisputed testimony, HLP never offered argument or evidence of what actions, if any, HLP took to allay her and/or her attorney's concerns.

Crucial to HLP's LUTPA claim is understanding what transpired during the conference call after HLP learned of Ms. Owen's concerns. Ms. Owen testified that while she was not a party to the call, she met with her attorney the day before and understood that her attorney intended to approach HLP about restructuring the arrangement so that GenX would comply with all applicable laws. Val Generes, on the other hand, testified that Ms. Owen's attorney did not offer any revisions to the agreements.

Ms. Owen also testified that following the conference call with HLP, there were several discussions between her attorney and HLP to revise the agreements. However, because of discovery sanctions, Ms. Owen was precluded from introducing evidence which she alleges supports her claim. Regardless, from September 2016 through the early part of 2017, HLP continued to operate the business under the OA and MSA terms even though the documents were not signed. It is a mischaracterization to suggest that Ms. Owen misrepresented her intent to sign the agreements when she reiterated her intent to formalize the agreement in an email, stating that her attorney's concerns were not any kind of "dealbreakers." Likewise,

it is a mischaracterization to claim that Ms. Owen misrepresented her intent to execute the agreements when her unrebutted testimony was that her attorney advised her not to sign the agreements as drafted because they called into question the legality of GenX's operations.

Even assuming HLP was receptive to her concerns, HLP offered no evidence that HLP itself tried to salvage the partnership. Val Generes offered no testimony as to what transpired after learning of Ms. Owen's hesitations. He did not testify if HLP took any steps to revise the agreement, nor did he offer testimony of actions HLP took ensure the legality of the arrangement. Despite the lack of testimony as to the January 2017 conference call, what is important to determining whether there was a calculated attempt to deceive or act in bad faith is not whether her attorney was correct to advise her not to sign the agreements, but whether Ms. Owen relied on the advice of counsel in deciding not to sign the agreements as drafted. HLP offered no evidence, even argument, to rebut her defense.

Only conduct that is egregious, deceptive in nature, and done with the specific intent to harm the competition will be sanctioned under LUTPA. *Quality Envtl.*, 13-1582, p. 21, 144 So.3d at 1025. In this case, Ms. Owen cannot be said to have acted in bad faith or with the specific intent to harm HLP. Ms. Owen testified that in those initial months of business she was more focused on managing the day-to-day operations of the new pharmacy. Even if, in hindsight, Ms. Owen's failure to retain a lawyer sooner to review the documents was an unsound business decision, a poor business decision does not necessarily amount to a LUTPA violation. HLP has not presented any evidence to suggest that Ms. Owen had the specific intent to deceive HLP. Instead, the evidence shows that Ms. Owen simply relied on advice of counsel to not sign the documents as drafted. Relying on the advice of counsel hardly amounts to the egregious and deceptive behavior LUTPA is designed to prevent. In fact, relying on advice of counsel is encouraged under the law and supported by our

jurisprudence. *See, e.g. McClanahan v. McClanahan*, 11-284 (La. App. 5 Cir. 12/28/11), 82 So.3d 530 (holding that a defendant's reliance on advice of counsel is a valid defense in a suit for damages for malicious prosecution). Further, Ms. Owen consulted an experienced Virginia attorney in the area of healthcare law. Thus, in the absence of evidence to the contrary, Ms. Owen was justified in her belief in her attorney's competency and was in good faith relying on his advice. After thorough review of the record, we find the record lacks a reasonable basis for the trial court to find that Ms. Owen violated LUTPA. Therefore, the trial court's ruling as to HLP's LUTPA claim is reversed.

Considering our finding, we must also address an ancillary matter—the trial court's July 20, 2021 judgment granting HLP's motion to fix costs. Pursuant to La. R.S. 51:1409(A):

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by [La.]R.S. 51:1405 may bring an action individually but not in a representative capacity to recover actual damages.... In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs.

In that we find the evidence does not support the trial court's finding Ms. Owen in violation of LUTPA, HLP is not entitled to recover attorney's fees under La. R.S. 51:1409(A). Therefore, the trial court's July 20, 2021 judgment granting HLP's motion to fix costs is vacated.

### *Breach of Letter of Intent*

Louisiana jurisprudence recognizes that "[t]here is a great deal of daylight between a breach of contract claim and the egregious behavior [LUTPA] proscribes." *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 14-0323, p. 12 (La. App. 4 Cir. 10/1/14), 151 So. 3d 670, 678)(quoting *Cheramie*, p. 11, 35 So.3d at 1160); *Carroll Insulation & Window Co. v. Biomax Spray Foam Insulation, LLC*, 50,112, p. 6-7 (La. App. 2 Cir. 11/18/15), 180 So. 3d 518, 524. For that reason, a

defendant's actions may be deemed a breach of contract, but not rise to the level of a LUTPA violation. We find such is the case here.

Contracts must be performed in good faith. La. C.C. art. 1083. "In order to prevail on a breach of contract claim, the plaintiff must prove by a preponderance of the evidence: 1) defendant owed him an obligation; 2) defendant failed to perform the obligation; and 3) defendant's failure to perform resulted in damage to the plaintiff." *Stipp v. MetLife Auto & Home Ins. Agency, Inc.*, 17-61, p. 11 (La. App. 5 Cir. 8/30/17), 225 So.3d 1182, 1189.

The LOI states that "[e]ach party shall act honestly, diligently, and in good faith in their respective endeavors to negotiate, settle, and execute the Formal Agreements following the execution of this Letter of Intent." According to the LOI, Ms. Owen obligated herself immediately thereafter, or contemporaneous with closing GenX to enter into an exclusive MSA and OA with HLP. Ms. Owen executed the LOI with HLP on or about September 6, 2016. The LOI constitutes a binding contract between HLP and Ms. Owen.

The record reflects that HLP sent Ms. Owen the drafts of the OA and MSA in October 2016. Thereafter, in November 2016, HLP emailed Ms. Owen for a status update. HLP did not hear from Ms. Owen at that time. In January 2017, Ms. Owen emailed HLP that her attorney had completed a review of the documents but had some concerns. HLP asserts that for nearly four months Ms. Owen took no action to negotiate in good faith the drafted agreements. While we agree that there was a delay in Ms. Owen's efforts to act on the agreements, we find the delay began from the time HLP forward the drafted agreements to Ms. Owen until the time Ms. Owen's attorney expressed concerns about the legality of the agreements—approximately a two and one-half month delay.

A reading of the LOI demonstrates that there is no specified date or period by which Ms. Owen was required to sign or negotiate the terms of the formal

agreements.[4] La. C.C. art. 1778 provides that when a term for the performance of an obligation is not determinable, "the obligation must be performed within a reasonable time." "What constitutes a reasonable time must be determined by the circumstances of each case." *Perrin v. Hellback*, 296 So.2d 342, 344 (La. App. 4th Cir. 1974).

Ms. Owen fails to offer any evidence, testimony or otherwise, to establish any efforts she took once she received the agreements to sign them or to offer revisions, which would warrant finding her lack of performance not unreasonable but due to circumstances outside her control. By her own testimony, Ms. Owen admitted that after GenX opened its doors, she was more focused on managing the day-to-day operations of the new pharmacy than retaining a lawyer to review the agreements. In the absence of proof of any mitigating factors that would suggest otherwise, it must be concluded that Ms. Owen's inaction over this period of time is unreasonable and contrary to the objectives of the LOI, particularly where HLP had and continued to perform in good faith its obligations under the LOI.

Ms. Owen contends that she attempted to negotiate the terms of the agreements after she was advised by her attorney that the business arrangement violated state and federal law. As evidence of her good faith attempts to negotiate, Ms. Owen points to the January 12, 2017 conference call her attorney and his partner had with HLP. The parties both agree that Ms. Owen's attorneys voiced concerns about the legality of the agreements. They dispute, however, the nature of the call after Ms. Owen's attorneys made it known that based on their professional opinion, the operating structure of GenX was illegal. Although Ms. Owen was not a party to the call, she testified that the purpose of the call was to restructure the arrangement in a way that would comply with the law. In contrast, Val Generes actually

_____

[4] The LOI obligated Ms. Owen to enter into the agreements immediately after or contemporaneously with the purchase of GenX. However, HLP did not forward the documents to Ms. Owen until a month after the closing of the GenX purchase.

participated on the call. He admitted that Ms. Owen's attorneys expressed their concerns about the legality of the arrangement; however, at some point during the call, it was Ms. Owen's attorneys who refused to revise the agreements and the discussion turned towards dissolution of the partnership and settlement. In the absence of evidence that Ms. Owen or her attorneys provided or offered to provide revisions to the OA and MSA, it follows that the trial court had a reasonable basis to conclude Ms. Owen breached the LOI.

### *Motion for New Trial*

Ms. Owen submits that the trial court abused its discretion when it failed to grant her motion for new trial. Specifically, she claims the trial court's judgment finding her in breach of the LOI is contrary to the law and evidence.

"A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." La. C.C.P. art. 1973. The granting or denying of a motion for new trial is within the discretion of the trial court. *131 Beverly Knoll, LLC v. Clipper Constr., LLC*, 18-486, p. 8 (La. App. 5 Cir. 5/15/19), 273 So. 3d 1243, 1250. The trial court's determination of a motion for new trial shall not be disturbed absent an abuse of its discretion. *Lambert v. State Through Dep't of Transp. & Dev.*, 96-160, p. 10-11 (La. App. 5 Cir. 10/16/96), 683 So.2d 839, 845.

In her motion for new trial, Ms. Owen avers that the drafted OA and MSA violated Virginia and federal pharmacy regulations. As a result, the agreements, she argues, are for an unlawful cause and therefore unenforceable. On appeal, Ms. Owen claims the trial court failed to consider her defense that the agreements were unenforceable because they violated applicable laws and because the trial court should have considered as evidence a series of pre-suit written correspondence between the parties' respective counsel. Ms. Owen contends that this evidence

proves she attempted to negotiate and directly contradicts HLP's claims at trial.[5]

HLP opposed the motion for new trial, arguing that Ms. Owen's motion relies on new evidence that she failed to present at or prior to trial. "When a motion for new trial is based on the contention that the judgment is clearly contrary to the law and evidence, no additional evidence may be presented at the hearing on the motion." *Rivet v. State, Dep't of Transp. & Dev.*, 01-0961, p. 5 (La. 11/28/01), 800 So. 2d 777, 781.

The trial court agreed that the evidence Ms. Owen attempted to introduce in support of her motion for new trial was evidence Ms. Owen failed to produce prior to trial. Furthermore, the trial court rendered judgment against Ms. Owen, which precluded her from presenting any evidence that was not already produced in discovery. Notably, Ms. Owen did not object or seek review of the trial court's judgment in that regard.

La. C.C.P. art. 1972(A)(1), provides that "[a] new trial shall be granted, upon contradictory motion of any party…[w]hen the verdict or judgment appears clearly contrary to the law and the evidence." "Under this article, a new trial should be ordered when the district court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice." *Rivet*, 01-0961, p. 5, 800 So. 2d at 781. In other words, the trial court's judgment should not be set aside "if it is supported by any fair interpretation of the evidence." *Guillory v. Lee*, 09-0075, p. 38 (La. 6/26/09), 16 So.3d 1104, 1131.

Based on our thorough review of the record, it cannot be said that the trial court abused its discretion in denying Ms. Owen's motion for new trial. As discussed in detail earlier in this opinion, we find the trial court's finding Ms. Owen

---

[5] Ms. Owen's motion sought a new trial based on the trial court's finding her in breach of the LOI and in violation of LUTPA. In that this opinion discusses in great length why we find the record fails to establish a reasonable basis for the trial court to find Ms. Owen violated LUTPA, we limit our discussion of the merits of the motion for new trial to the trial court's finding that Ms. Owen breached the LOI.

in violation of LUTPA is not supported by the evidence.[6]  With respect to the trial court's finding that Ms. Owen breached the LOI, we find the trial court's judgment is based on its reasonable interpretation of the evidence in the record, and is not contrary to that evidence.  As such, we find no abuse of the trial court's discretion in denying the motion for new trial.

### *Discovery Sanctions*

In her final assignment of error, Ms. Owen avers the trial court abused its discretion when it imposed sanctions against her for failing to respond to discovery. Ms. Owen contends that her original attorney, who was suspended from the practice of law in Louisiana for three years, failed to respond on her behalf to discovery requests, failed to respond to emails from HLP's attorney, and failed to attend hearings on the related motions to compel production and sanctions.

Rule 1-3 of the Uniform Rules, Courts of Appeal, states in pertinent part: "[t]he Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise."  However, it is widely held that:

> a party's failure to timely seek the modification or reversal of an underlying judgment is a "jurisdictional defect, in that neither the court of appeal nor any other court has the jurisdictional power and authority to reverse, revise or modify a final judgment after the time" for seeking such modification or reversal has elapsed.

*6126, L.L.C. v. Strauss*, 13-0853, p. 21-22 (La. App. 4 Cir. 12/4/13), 131 So.3d 92, 105 (quoting *Baton Rouge Bank & Trust Co. v. Coleman*, 582 So.2d 191, 192 (La.1991)).  Consequently, "when a party fails to seek timely modification or reversal of an underlying judgment, 'the judgment acquires the authority of the thing adjudged, and the court of appeal has no jurisdiction to alter that judgment.'"  *Id.*, 13-0853, p. 22, 131 So.3d at 105.

---

[6] *See supra note 5.*

"All contempt judgments are deemed final judgments, subject to immediate appeal." *Cambrie Celeste LLC v. Starboard Mgmt., LLC*, 16-1318, p. 9-10 (La. App. 4 Cir. 11/6/17), 231 So. 3d 79, 85; *Par. of St. Charles ex rel. Dep't of Plan. & Zoning v. Bordelon*, 08-385, p. 2 (La. App. 5 Cir. 10/28/08), 998 So. 2d 751, 752. La. C.C.P. art. 1471(A) authorizes the trial court to issue sanctions when a party refuses or fails to comply with a discovery order. Similarly, even in the absence of an order, La. C.C.P. art. 191 permits the trial court to impose sanctions when a party fails to adhere to discovery rules as the failure to comply "interferes with the court's ability to administer justice." *Carter v. Hi Nabor Super Mkt., LLC*, 13-0529, p. 7 (La. App. 1 Cir. 12/30/14), 168 So. 3d 698, 704.

After Ms. Owen did not respond to HLP's discovery requests, HLP filed a motion to compel production. A consent judgment ordering Ms. Owen to respond to HLP's discovery requests was entered in May 2018. When Ms. Owen failed to respond again, HLP filed a motion for contempt of court and sanctions. In August 2018, the trial court granted HLP's motion for contempt of court, ordering Ms. Owen to respond within 24 hours of judgment. When Ms. Owen failed to provide responses yet again, HLP filed a second motion for contempt of court and sanctions. The trial court granted HLP's second motion in October 2018 and ordered Ms. Owen precluded from producing any additional documents not previously produced in discovery. The trial court's October 2018 judgment is a final appealable judgment. It is self-evident from the procedural history in this case that all delays for appellate review have prescribed. Consequently, this Court has no jurisdictional authority to reverse a final judgment after the delays for seeking review have run. Accordingly, we dismiss Ms. Owen's appeal of the sanctions issue as untimely.

### *DECREE*

Based on the foregoing reasons, we find no error in the trial court's judgment finding Ms. Owen in breach of contract and liable for damages. However, we find

the record lacks sufficient evidence to support the trial court's finding Ms. Owen in violation of LUTPA; therefore, HLP is not entitled to attorney's fees under LUTPA. Furthermore, we find no abuse of the trial court's discretion in the denial of Ms. Owen's motion for new trial and find Ms. Owen's appeal of the trial court's October 2018 judgment imposing discovery sanctions is untimely. Accordingly, we affirm in part and reverse in part the trial court's November 2020 judgment as to Ms. Owen's liability for breach of the LOI and damages; vacate the trial court's July 20, 2021 judgment granting HLP's motion to fix attorney's fees and costs under LUTPA; affirm the trial court's May 2021 judgment denying the motion for new trial; dismiss Ms. Owen's appeal of the trial court's October 2018 judgment granting HLP's second motion for contempt of court and sanctions; and order the matter remanded to the trial court for further proceedings in line with this opinion.

**AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; DISMISSED IN PART; AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 2, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-47

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
ALBERT J. NICAUD (APPELLEE)          JEFFREY M. SIEMSSEN (APPELLEE)          JAMES C. CRONVICH (APPELLANT)
JORDAN T. LEBLANC (APPELLANT)

### MAILED

BRET D. GUEPET, JR. (APPELLEE)          CLARENCE F. FAVRET, III (APPELLANT)
WILL C. GRIFFIN (APPELLEE)              ATTORNEY AT LAW
ATTORNEYS AT LAW                        650 POYDRAS STREET
3000 18TH STREET                        SUITE 2300
METAIRIE, LA 70002                      NEW ORLEANS, LA 70130